HUGO RIDDELL *vs.* ROCHESTER GERMAN INSURANCE COMPANY OF NEW YORK.

DECEMBER 20, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, Sweetland, and Vincent, JJ.

*(1)  Foreign Corporations.*

Foreign corporations in the exercise of their powers within this State are subject to two limitations; (1) they can only exercise such powers as have been conferred upon them by their charters or by the laws of the state of their creation; (2) as to those powers they can only exercise such of them, as are not repugnant to the laws of this State.

*(2)  Foreign Corporations.  Merger.  Abatement and Revival.*

While an action was pending in this State against a foreign insurance company, defendant company merged with another foreign company under a statute of the State of New York, which provided that, "No action pending at the time of the consolidation in which any of the old corporations may be a party shall abate or discontinue by reason of the merger, but the same may be prosecuted to final judgment in the same manner as if the merger had not taken place, or the new corporation may be substituted in place of any corporation so merged by order of the court in which the action may be pending."

*Held,* that within the intent of the statute, the old corporations retained a sufficient existence to enable them to maintain or defend existing suits wherever the same might be pending.

*Held,* further, that it was not necessary that the statute should distinctly refer to suits in other states, in order that their abatement might be avoided, the intention being clear from the general language of the statute.

*(3)  Foreign Corporations.  Abatement and Revival.*

Gen. Laws, 1909, cap. 213, § 9, relative to the continuance of corporations for three years after dissolution, for certain purposes, has no reference to a foreign insurance company doing business in this State, which has been merged under the statutes of a foreign state, since the right to maintain an action unabated against such foreign company cannot come from any legis-

lation in this State, but such right must be found in its charter or in the laws of the state of its creation.

*(4)   Foreign Corporations.*

While this State may limit and restrict the operations of a foreign corporation in this State, it cannot give additional powers to it.

*(5)   Foreign Corporations.*

A statute of a foreign state regulating the merger of two foreign corporations by the provisions of which no action pending against the old companies should abate by reason of the merger, but the same might be prosecuted to final judgment or the new corporation substituted in place of the old, by order of the court in which the action might be pending, does not indicate any attempt to legislate with respect to the procedure to be followed by the courts in other states, nor can it be construed as intending to create liabilities and impose them upon persons and property outside of its jurisdiction, but it is more in the nature of an intention to protect those who might have dealings with the companies either in their own or in any foreign state where they had transacted business.

ASSUMPSIT.   Heard on exceptions of plaintiff and sustained.

VINCENT, J.   This is an action commenced by Hugo Riddell, the mortgagee of insured personal property, against the Rochester German Insurance Company incorporated under the laws of the State of New York, to recover the amount of a loss sustained by fire, the same being covered by a policy of said company.   The action was begun on February 20, 1908.   During the pendency of the suit, to wit, on May 9, 1911, the Rochester German Insurance Company and the German American Insurance Company, the latter also a New York corporation, become merged and consolidated, under the provisions of Section 129 of the Insurance Law of New York, and since that date the business of both corporations has been carried on by the consolidated corporation under the name of "The German American Insurance Company."

Subsequent to the merger, counsel who had before appeared in the case for the Rochester German Insurance Company suggested, in writing, to the Superior Court that his client, the Rochester German Insurance Company, had

·ceased to exist, appending to such written suggestion a copy of the law under which the merger had been effected, together with a copy of the agreement of consolidation, a copy of the charter of said German American Insurance Company and copies of certain certificates which were incidental to the merger proceedings.

The provision in Section 129 of the Insurance Law of New York under which the merger was accomplished is as follows:,

"Upon such merger or consolidation all the rights, franchises and interests of the corporations so merging or consolidating in and to every species of property and things in action belonging to them or either of them shall be deemed to be transferred to and vested in the new corporation without any other deed or transfer, and the new corporation shall hold and enjoy the same to the same extent as if the old corporations or either of them should have continued to retain their titles and transact business. The new corporation shall succeed to all the obligations and liabilities of the old corporations or any of them, and shall he held liable to pay and discharge such debts and liabilities in the same manner as if they had been incurred or contracted by it. . . . . No action or proceeding pending at the time of the consolidation in which any or all of the old corporations may be a party shall abate or discontinue by reason of the merger or consolidation, but the same may be prosecuted to final judgment in the same manner as if the merger or consolidation had not taken place, or the new corporation may be substituted in place of any corporation so merged or consolidated by order of the court in which the action or proceeding may be pending."

The Superior Court dismissed the suit and to such dismissal the plaintiff took an exception.

As stated in the brief for the defendant, "The question in the cause is whether or not, by the merger of the Rochester German Insurance Company with the German American Insurance Company under the provisions of the New York

Statute, an action pending in this State against the Rochester German Insurance Company abated."

The defendant claims that the suit abated (1) because the Rochester German Insurance Company ceased to exist after the consolidation, (2) because courts have no jurisdiction of a defendant corporation after it is dissolved, (3) that the provision in the statute of New York providing for the continuation of pending suits against the constituent companies has no ex-territorial force, (4) that the provisions of our statute, Gen. Laws, Chap. 213, Sec. 9, relating to the continuance of a corporation for the period of three years after expiration or annulment of its charter has no application to the present case, and (5) that while it is not claimed that the merger has deprived the plaintiff of any right to recover upon his policy of insurance, the defendant is not now a corporation with either a general, limited or special existence against which a court can render a judgment.

Insurance companies duly created under the laws of other states are permitted to transact business in this state upon compliance with the provisions of our statute, Chap. 20, Gen. Laws. A foreign insurance company, or other foreign corporation, in the exercise of its powers within this state, is subject to two limitations; (1) it can only exercise such powers as have been conferred upon it by its charter or by the laws of the state of its creation, and (2) as to those powers it can only exercise such of them as are not repugnant to our laws. The law in this regard seems to be well summarized in Clark and Marshall on Private Corp., Vol. 3, Secs. 840 and 841, as follows:

"Sec. 840. A corporation, clearly, cannot properly exercise in another state or country any powers which are not conferred upon it, either expressly or impliedly, by its charter. And, as a general rule, it is subject in other states to general legislation of the state of its creation.

"Sec. 841. When a corporation goes into another state than that by which it was created, with its consent, express or implied, it does so subject to its laws. It cannot exercise

powers or do acts in such other state which are contrary to its laws, although they may be authorized by its charter and by the laws of its own state."

Continuing, the authors quote from the language of Chief Justice Waite in *Canada Southern Ry. Co.* v. *Gebhard,* 109 U. S. 527, as follows: "Wherever a corporation goes for business it carries its charter, as that is the law of its existence, . . . and the charter is the same abroad that it is at home. Whatever disabilities are placed upon the corporation at home it retains abroad, and whatever legislative control it is subjected to at home must be recognized and submitted to by those who deal with it elsewhere."

In *Pierce* v. *Crompton,* 13 R. I. 312, this court held that an assignment by a corporation created under the laws of New York and doing business here was void and of no effect and could not have the effect of suspending or dissolving a previous attachment or levy on the ground that the corporation had not power under the laws of New York to make such an assignment and that a foreign corporation has only such powers as have been conferred upon it by its charter or the laws of the state to which it owes its existence.

In the case of *Canada Southern Ry. Co.* v. *Gebhard,* 109 U. S. 527, the court also said, "A corporation must dwell in the place of its creation and cannot migrate to another sovereignty though it may do business in all places where its charter allows and the local laws do not forbid. . . . A corporation of one country may be excluded from business in another country, but, if admitted, it must, in the absence of legislation equivalent to making it a corporation of the latter country, be taken, both by the government and those who deal with it, as a creature of the law of its own country, and subject to all the legislative control and direction that may be properly exercised over it at the place of its creation."

In the case of *Harris-Woodbury Lumber Co.* v. *Coffin, et al.,* 179 Fed. 257, the Circuit Court for the Western District of North Carolina said: "A corporation, doing business in a state other than the one wherein it is created, can only

exercise such powers and functions as may be conferred upon it by its charter, and the transaction of its affairs is limited strictly to the authority granted by the state of its creation. It is only by the rule of comity that it is permitted to do business in this State at all, and, when it does so, it necessarily carries with it all the powers granted in its charter.　Moreover, when a question of power in a given instance is involved, such question must be determined by the laws of its domicile, and those who may have transactions with such corporation are subject to the limitations and powers contained in its charter."

In *Michigan State Bank* v. *Gardner*, 15 Gray (Mass.) 362, the court, after stating that the laws of Michigan provided that all corporations expiring by their own limitation should continue to be bodies corporate for three years, for the purpose of prosecuting and defending suits and that any suit pending at the time of dissolution should not be abated thereby, held, that " a suit commenced in this State before the expiration of the charter might be prosecuted to judgment after the end of the three years, in the name of the corporation, by the assignee."

In *Scott* v. *Stockholders' Oil Co., et al.*, 142 Fed. 287, (Cir. Ct. Penn.) the court said, "The motion to abate the suit is made upon the ground that both the defendant corporations were dissolved on January 9, 1905, by a proclamation of the Governor of Delaware for non-payment of taxes. It is needless to inquire what force the fact of dissolution might have, if the defendants were corporations of this State. They are Delaware corporations, however, and Section 36 of an act of that state, passed on March 10, 1899, expressly provides:　'All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but

not for the purpose of continuing the business for which said corporation shall have been established.'" And the opinion continues: "This section is not confined to suits brought against them in the state of their origin, but is general in its terms, and applies to all suits by or against them, wheresoever brought or defended."

*In L. Bucki, etc. Co.* v. *Atlantic etc. Co.,* 128 Fed. 332, (Florida) it was held that under the corporation laws of New Jersey which provide that corporations after their dissolution shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them, the dissolution of a corporation does not abate an action brought by such corporation in Florida to recover damages to its estate, business, and credit by reason of an alleged wrongful attachment of its property.

Many other authorities might be cited to the same effect, but we think that the foregoing sufficiently state the law as to the powers and limitations of foreign corporations doing business in this State.

The defendant in support of its contention, that after the consolidation the Rochester German Insurance Company ceased to exist, cites *Gladding* v. *Saint Matthew's Church,* 25 R. I. 628. In that case the testatrix having been a member of and much interested in Saint Ann's Church for Deaf Mutes, in the City of New York, made a will leaving a fund thereto. Prior to her decease Saint Ann's Church became consolidated, under the laws of New York, with Saint Matthew's Church. The new statute provided for the transfer to the new corporation of the membership, property, rights and obligations of the former corporations.

The court says, "We do not see how a corporation can be held to exist in law after the power which has created it has taken from it all its membership, property, and powers— everything which constituted its legal personality."

We do not dispute the principle thus laid down. But the question arises in the case at bar as to whether the power which created these two insurance companies has, through

the merger, stripped them altogether of their individuality. The New York insurance law, from which quotation has already been made, expressly provides that proceedings instituted against either of these companies shall not abate by reason of such consolidation but that such suits may be continued until final judgment in the same manner as if such consolidation had not been effected. The force of the provision in the New York statute is fully recognized by our court in the *Gladding* case, before mentioned, when it cites with approval the case of the *People* v. *N. Y., C. & S. L. R. R. Co.*, 129 N. Y. 474, including in such citation the following words of Judge Andrews: "This decision accords with the general current of authority to the effect that the statutes for the consolidation of domestic corporations are to be treated as acts of incorporation, and that on consolidation being effected under their provisions, the constituent companies, *unless such an intention is excluded by the language of the statute,* are deemed to be dissolved, and their powers and faculties to the extent authorized become vested in the consolidated company as a new corporation created by the act of consolidation."

(3)    It seems to us that in the case at bar it was not the intention of the legislature of New York that these individual insurance companies should, on consolidation, cease to exist absolutely but that they should still retain a sufficient existence to enable them to maintain or defend existing suits wherever the same might be pending.

We agree with the contention of the defendant that Sec. 9, Chap. 213 of our Gen. Laws has no application to the present case. The right to maintain this action unabated does not and cannot come from any legislation in our own State, but such right must be found in the charter of these insurance companies or in the laws of the State of New York. Our legislature cannot give additional powers to a foreign corporation. They may limit and restrict its operations in this State, but that is a very different matter from conferring upon it powers which are not conferred by the state of its domicile.

The defendant further claims that upon the cessation of the existence of the Rochester German Insurance Company the plaintiff's suit abated and in support of this the defendant cites a number of cases and quotes from Sec. 1031 of Morawetz on Corporations, as follows:   "The dissolution of a corporation, at common law, not only means that the company has lost its franchises and can no longer *act* in a corporate capacity, but it implies that the corporation has wholly ceased to exist, in legal contemplation, and will not be recognized as a corporate body for any purpose.   It follows, that suits brought by or against a corporation are abated by its dissolution; and a judgment purporting to be rendered against a corporation which is not in existence is a nullity."

We are unable to give to this language the full force and meaning which the defendant appears to claim for it in its application to the present case.   It would undoubtedly be conclusive of the present case except for the provision of the New York statute that no action or proceeding pending at the time of the consolidation shall abate by reason thereof, but that the same may be prosecuted to final judgment in the same manner as if such consolidation had not taken place. We do not think that Sec. 1031 was intended to apply to the case of a corporation which was continued for certain purposes because we find it clearly laid down in Morawetz, Sec. 998, that if a corporation is considered in existence for the purpose of suing and being sued and winding up its affairs, after having been dissolved and prohibited from further prosecuting its business in the state where it was created, *it will also be considered in existence for that purpose in foreign states.*

Some of the decisions relied upon by the defendant do not seem to us to support its contention.

In the case of *Rodgers* v. *Adriatic Fire Insurance Company,* 148 N. Y. 34, the court held that the State of New York was not required by comity to give to a foreign judgment the effect of reaching the corporate assets held by the receiver in that state as a fund for distribution after the dissolution of

the corporation when the receiver has not been made a party to the foreign suit so as to be bound by the judgment therein.

In *Howe* v. *N. Y., N. H. & H. R. R. Co.*, 126 N. Y. S. 1090, the court would not entertain jurisdiction of a representative action by resident stockholders of a foreign corporation, where the foreign corporation has ceased to exist and is defunct under the laws of its domicile, for the devolution of the property of a foreign corporation is governed by the laws of its domicile, and the courts of another state should not undertake to administer the assets of such a corporation any more than they would in the case of a natural person.

In *Gulledge Brothers Lumber Co.* v. *Wenatchee Land Company*, 115 Minn. 491, the corporation was dissolved by operation of the laws of Washington under which all its property became vested in trustees to be administered by them for the benefit of its stockholders and creditors subsequent to the commencement of the plaintiff's suit to recover damages for breach of contract. After dissolution, appellants, by order of the court below, were appointed receivers of the corporation, and they applied to be substituted as parties plaintiff in the action. The court held that on the dissolution of the corporation the property became vested in trustees under the laws of Washington and that the action therefore could not be revived and continued by the receivers but that if revived at all it must be at the instance of the trustees.

In *Pendleton* v. *Russell*, 144 U. S. 640, a judgment was recovered in the U. S. Circuit Court for the Western District of Tennessee against a life insurance company a corporation of New York. Prior to such judgment the insurance company had gone into the hands of a receiver, through proceedings taken in New York under the direction of the Attorney General of that state. The receiver was not made a party to the suit in Tennessee. This judgment was filed in New York as a claim against the assets of the company in the hands of the receiver and it was held by the Court of Appeals of New York that the Circuit Court of Tennessee had no

jurisdiction over the case, after the dissolution of the corporation, which could bind the property of the company in the hands of the receiver. So far as appears there was no statutory provision in New York that under such conditions pending suits might proceed to judgment, as in the case at bar, or that the dissolved company should in any degree or for any purpose retain its entity or even a partial existence. The company in that case had apparently gone entirely out of existence and its assets had passed to a receiver whose duty it was to administer them under the direction of the court appointing him.

Without a further detailed discussion of the cases cited by the defendant, we think it will readily appear upon examination that they fail to cover the point of the defendant's contention that the suit of the Rochester German Insurance Company abated through the consolidation which was effected in New York under the statute of that state saving to plaintiffs the right to prosecute to final judgment, their suits against either of the merged companies in the same manner as if such merger had not taken place.

The defendant also contends that the statute of New York has no ex-territorial force, at the same time admitting that there is a line of decisions in which it is held that, in case of dissolution, where a statute continues the corporate existence for the purpose of winding up its business, permitting it to sue and be sued in connection therewith, that such existence of the corporation for such purpose is continued outside as well as inside the state of its creation and domicile and that such doctrine is a correct statement of a sound principle. But the defendant further claims however that such doctrine is not applicable to the case at bar and that the provision of the New York statute regarding the abatement of suits, etc., only refers to suits pending in the State of New York and relates to the remedy for enforcing the rights and claims against the new corporation without affecting the suits of the constituent corporations. We do not think that such a limitation can be inferred from the lan-

guage of the statute referred to nor is there anything therein which would warrant us in assuming that it was the intention of the legislature of New York to so limit the operation of such statute. On the contrary, it seems to us to have been the clear intention that all parties wherever situated should be equally benefited.

The defendant cites, as follows, from Black on Interpretation of Laws (2nd Ed.) 108: "Although the legislature may provide remedies within the state for the collection of claims or enforcement of liabilities arising out of the state, it is not within the competency of the legislative power to create personal liabilities and impose them on persons and property out of the jurisdiction of the state, and on account of transactions beyond its territorial limits."

The two insurance companies in question came into existence by virtue of the powers and through the enactment of the legislature of the State of New York and were subject to the laws of that state. Their power to do business in states other than the state of their creation was wholly derived from the charters granted to them by the State of New York and the laws of New York governing insurance corporations and they were not and could not be invested with any other or further powers. In the matter of consolidation these companies proceeded under the laws of New York which contained an express provision to the effect that such consolidation should not abate any pending suit against either of the constituent companies. It was within the province of the legislature of the State of New York, through its statute, to say to the two companies which it had created that they might consolidate but that they must do so in such manner and under such conditions as would preserve the rights of litigants in all pending cases against either of them.

This provision of the New York statute does not indicate any attempt to legislate with respect to the procedure to be followed by the courts in other states nor can it be construed as intending to create liabilities and impose them upon persons and property outside of its jurisdiction, but it is more in

the nature of a statute intended to protect those who might have dealings with these companies either in the state of their creation or in any foreign state where they had transacted business.

We think it is competent for such legislature to say, under the conditions of the case at bar, whether or not the corporations which it has created shall, upon consolidation, be individually responsible to those having claims against them prior to such consolidation. It is not necessary, in our opinion, that the statute of New York should distinctly refer to suits in other states in order that their abatement might be avoided. The language of the statute is general and the intention seems to be clear. As this statute provides for the continuation of pending suits against these corporations it cannot be presumed that they were to be absolutely wiped out through consolidation, but rather that they should survive to a limited extent; to an extent sufficient to give the statute effect wherever either of said corporations had conducted business prior to the consolidation.

The plaintiff's exception is sustained, the decision of the Superior Court is reversed and the case is remitted to that court for further proceedings.

*Page & Cushing,* for plaintiff.

*Cyrus M. Van Slyck, Amicus Curiae,* for defendant.